Battle, J.
The question -on the record by the bill of exceptions is one of much practical importance in these dajs of increased and increasing travelling in stages, rail *204 road ears and other modes of conveyance. Though hot a new question in some of the American States, it is now for •the first time brought before us, ahd we must decide it upon the principles of evidence settled and established in •this State.
It is an ancient' and fundamental rule of evidence in the common law, that “ nemo in propria causa. testis esse debet." 1 Bla. Com. 443. Exceptions to this rule have, perhaps always, been admitted as to matters which are auxiliary to the trial, and which are in their nature preliminary to the principal subject of controversy, and are addressed to the court. Thus a party may make affidavit to the materiality of a witness, of. diligent search made for a witness, or fora paper alleged to he lost; of his inability to, attend ; of the .death of a subscribing witnessand cases of the like kind. 1 Creen. onEv. see. 349. But upon the trial ofi the merits .of the cause, on an is3ne before the jury, the maxim that no one is allowed to he a witness in his own cause” has come down to us from the earliest period of the common law, almost intact. The first innovation made upon -it arose out of the Statute of Winchester, 138 Ed. 1, ch. 1, commonly called the statute of hue and cry, which gave to a party robbed an action on the case for damages, against the hundred. In such action, the plaintiff was allowed to be a witness on his own behalf to prove the loss. This testimony was said to have been admitted'on the ground of necessity, and Lord Kenyon in Evans vs. Williams 7 Term. Rep. 481, in a note, said that originally, it was only in an action on that statute that it was admitted on such ground. It was no doubt, thought that as the statute gave the action to the party robbed, and as he could very rarely prove his loss except by his own oath, a just and liberal construction of it gave him also the privilege of being a witness for himself. The change of the rule of evidence in cases of this kind may, therefore, very properly, be considered as *205 having been effected by statutory enactment, rather than by a deviation from it at common law., The breach in the integrity of the maxim being, however,- once made, it was followed in course of time by at least one other innovation for which no statute can be held responsible. Thus, in 12 Vin. Abr. 24 pl. 32 it is laid down that in a trial at Bód-myn ccram Montague, Baron against a common carrier, a question arose about the things,.in a box, and he declared that this was one of .those cases where the parly himself might be a witness ex necessitate rei. These are the only cases which have been called to our attention as having been decided by the English common law courts : and of these it may be remarked that one was a decision at nisi prius, and the others were evidently the offspring of a statute. In some of the American States the decision made by Baron Montague ha’s been adopted, and applied to the baggage of a traveller lost by the negligence of tíie carrier. (See Pettigrew vs. Barnam 11 Maryland Rep. 434, Johnston vs. Stone 11 Hump. (Ten.) Rep. 419, Herman vs. Drinkwater, 1 Green. (Maine) Rep. 27), while in one State at least, it has been.rejected. See Snow vs. The Eastern Rail Road Co., 12 Met. (Mass.) Rep. 44.
In North Carolina the eommon law rules of evidence have been generally very strictly observed; and we are not aware that the maxim ’upon which we are commenting, has been departed from as to, testimony intended for the jury, except in cases where the innovation has been introduced by statute. Thus, in what is generally known as the hook debt law, a party may prove by his own oath the items of his account to the amount of sixty' dollars only. Rev. Code cli 15. In eases of this kind there was a very strong necessity for the admission of such testimony, but the courts did not feel themselves at liberty to change a settled rule of evidence, and it remained unaltered until 1756 when the act entitled" an act to ascertain the method *206 for proving book debts,” was passed. (See Rev. Code of 1820, ch 57). In admitting the witness to testify for himself, it is worthy of remark that the act has carefully guarded the other party against the. danger of corrupt or perjured testimony. The account must be a book account : there must be no other means of proving the delivery of the articles, than by the book and bis oath; it must be for articles delivered within the last two years, and he must swear that the book contains “ a true account of all the dealings, or the last settlement of accounts between them.”
The necessity for admitíing a plaintiff as a witness to prove the contents of his trunk in an action against a rail road company or other common carrier for its loss, is not. greater than it was iu the ease of shook debt; and as in the latter named case the courts felt themselves bound' to leave it to the legislature to supply a remedy for the mischief, so we must do in the case now before us. Our duty as a court is, to ascertain in each case that comes before us what the law is, and theu to decide accordingly and if in the progress of society new circumstances or combinations of circumstances arise, to which there is no principle of the common law applicable, we cannot assume the functions of legislators* to devise one. That is the province of the legislature, and we have neither the inclination nor the right to interfere with it.
The judgment of the court below must be affirmed.